```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
------------------------------x
                              :
OKEIBA SADIO,                 :
                              :
        Petitioner,           :
                              :
v.                            :        Civil No. 3:14cv1217(AWT)
                              :
UNITED STATES OF AMERICA,     :
                              :
        Respondent.           :
                              :
------------------------------x
```

# RULING ON MOTION TO
# VACATE, SET ASIDE OR CORRECT SENTENCE

Petitioner Okeiba Sadio ("Sadio"), proceeding pro se, has moved pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. He makes three arguments. First, he argues that there was insufficient evidence to support his conspiracy conviction and that he was a mere buyer/seller and not part of the charged conspiracy. Second, he claims that the court erred in calculating the quantity of narcotics involved in the offense, causing it to err in calculating the base offense level. Third, he contends that his trial counsel had a conflict of interest. For the reasons set forth below, the motion is being denied without a hearing.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On December 2, 2009, a federal grand jury returned an Indictment against Sadio and sixteen others charging various

narcotics offenses.  The defendant was arrested on December 2, 2009, and the police executed state search warrants for his residence and an Acura he had been observed driving.  In February 2010, after some of the defendants had pleaded guilty to the charges in the original Indictment, the grand jury returned a Superseding Indictment against the defendant, the remaining co-defendants, and two new co-defendants.  In July 2010, the grand jury returned a twelve-count Second Superseding Indictment against the defendant and four remaining co-defendants.  The Second Superseding Indictment charged the defendant, in Count One, with conspiracy to possess with the intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846, and an unspecified quantity of powder cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846, and in Count Twelve, with possession with the intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

Subsequently, the government filed a second offender notice as to the defendant, listing four separate prior felony drug convictions as potential qualifiers for enhanced penalties under 21 U.S.C. § 841(b).  On November 29, 2011, jury selection occurred, and trial commenced on December 6, 2011.  On December

2

13, 2011, the jury convicted the defendant of the charges in Counts One and Twelve of the Second Superseding Indictment.

The Presentence Report ("PSR") found that the base offense level, under the November 1, 2010 version of the Sentencing Guidelines, was 32 because the defendant was involved in conspiring to distribute more than 280 grams but less than 840 grams of cocaine base. With no reduction for acceptance of responsibility, the total offense level remained at 32. The PSR placed the defendant in Criminal History Category VI because he had accumulated a total of 22 criminal history points. At a total offense level of 32 and Criminal History Category VI, the advisory guideline incarceration range was 210 to 262 months.

At sentencing, the court, with the consent of the parties, applied the Fair Sentencing Act of 2010 to the defendant's case so that the mandatory minimum incarceration term was reduced from 20 years to 10 years because the defendant no longer was convicted of a violation under 21 U.S.C. § 841(b)(1)(A). The court adopted the factual findings and guideline calculation in the PSR and imposed a guideline incarceration sentence of 240 months.

On appeal, the defendant did not challenge his sentence. Instead, he argued that the court erred in denying his motion to suppress the evidence seized from his residence because the

3

search warrant affidavit did not establish probable cause.  He also argued that there was insufficient evidence to support his convictions because he was not a member of the charged conspiracy, and he did not intend to distribute the cocaine base seized from his bedroom.

The Second Circuit affirmed as to both counts of conviction.  It concluded that the warrant application was supported by probable cause and that there was sufficient evidence to support both counts of conviction.  See United States v. Muhammad, 520 Fed. Appx. 31, 40 (2d Cir. 2013).

**II. LEGAL STANDARD**

Federal prisoners can challenge a criminal sentence pursuant to 28 U.S.C. § 2255 only in limited circumstances.

> [A] "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice.'"

Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (citing United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)).

> [N]ot "every asserted error of law can be raised on a § 2255 motion." See Davis v. United States, 417 U.S. 333, 346 (1974) . . . . The grounds provided in section 2255 for collateral attack on a final judgment in a federal criminal case are narrowly limited, and it has "long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." United States v. Addonizio, 442 U.S. 178, 184 (1979) . . . ."

4

Napoli v. United States, 32 F.3d 31, 35 (2d Cir. 1994), amended on reh'g on other grounds, 45 F.3d 680 (2d Cir. 1995). Constitutional errors will not be corrected through a writ of habeas corpus unless they have had a "substantial and injurious effect," that is, unless they have resulted in "actual prejudice." Brecht v. Abrahamson, 507 U.S. 619, 623, 637-38 (1993); see also Underwood v. United States, 166 F.3d 84, 87 (2d Cir. 1999) (applying Brecht to § 2255 motions).

"A § 2255 motion may not relitigate issues that were raised and considered on direct appeal." United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997) (declined to review plea withdrawal claim that had already been argued on appeal). This "so-called mandate rule bars re-litigation of issues already decided on direct appeal." Yick Man Mui v. United States, 614 F.3d 50, 54 (2d Cir. 2010)(citation omitted). "The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." Yick Man Mui, 614 F.3d at 53.

"[F]ailure to raise a claim on direct appeal is itself a default of normal appellate procedure, which a defendant can overcome only by showing cause and prejudice." Campino v. United States, 968 F.2d 187, 190 (2d Cir. 1992). This rule is applied because of concerns about "finality, accuracy and the

5

integrity of prior proceedings, as well as concerns of judicial economy." Id. "[C]ollateral review of convictions 'places a heavy burden on scarce judicial resources, may give litigants incentives to withhold claims for manipulative purposes, and may create disincentives to present claims when evidence is fresh.'" Id. (quoting Keeney v. Tamayo Reyes, 504 U.S. 1, 7 (1992)).

To obtain review of procedurally defaulted claims, the petitioner must show both "cause" for the default of each claim and "prejudice" that resulted from the alleged violation. See Ciak v. United States, 59 F.3d 296, 301, 302 (2d Cir. 1995), abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162, 172 n.3 (2002) (quoting Wainwright v. Sykes, 433 U.S. 72, 87 (1977)). "Where the petitioner--whether a state or federal prisoner--failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice from the alleged . . . violation.'" Reed v. Farley, 512 U.S. 339, 354 (1994) (quoting Wainwright, 433 U.S. at 84).

"'Cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him". Coleman v. Thompson, 501 U.S. 722, 753 (1991) (emphasis in original). "[T]he existence of cause for a procedural default must ordinarily turn on whether

6

the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule." Id. (quotation marks omitted) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).

To demonstrate prejudice, a petitioner must convince the court "that 'there is a reasonable probability' that the result of the trial would have been different" if not for the alleged error. Strickler v. Greene, 527 U.S. 263, 289 (1999) (applying the cause-and-prejudice standard to a state procedural default in a § 2254 habeas case). The question is whether, despite the error, "[the petitioner] received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Id. at 289-90 (internal quotation marks omitted) (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)).

Section 2255 provides that a district court should grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief". 28 U.S.C. § 2255(b). However, district courts may "exercise their common sense", Machibroda v. United States, 368 U.S. 487, 495 (1962), and may draw upon personal knowledge and recollection of the case, see Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1997); United States v. Aiello, 900 F.2d 528, 534 (2d Cir. 1990). Thus, a § 2255 motion may be dismissed without

a hearing if, after a review of the record, the court determines that the allegations are insufficient as a matter of law.

### III. DISCUSSION

The government argues that the instant habeas petition was not timely filed. The court agrees and, moreover, concludes that assuming arguendo that the petition was timely filed, the petitioner's three arguments fail for additional reasons.

### A. <u>Untimeliness</u>

Under 28 U.S.C. § 2255,

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of - (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Here, the sentence was affirmed by summary order on April 13, 2013 and the mandate was issued on May 21, 2013. The petitioner did not file his § 2255 motion until August 18, 2014, more than a year after the judgment of conviction became final. Therefore, the petition is untimely under 28 U.S.C. § 2255(1).

8

B. **Sufficiency of the Evidence**

Sadio's claim that there was insufficient evidence to support his conspiracy conviction and that he was a mere buyer/seller and not part of the charged conspiracy is barred under the mandate rule because he raised the exact same argument on appeal. A § 2255 motion "may not relitigate issues that were raised and considered on direct appeal." Perez, 129 F.3d at 260. Here, Sadio argued on direct appeal that the evidence at trial established that he was a mere buyer/seller and not a member of the charged conspiracy.

The Second Circuit rejected this claim. Specifically, the court concluded:

> The jury had a sufficient basis to conclude beyond a reasonable doubt that Sadio and the Pena brothers shared the purpose of advancing Sadio's sales to his own customers. . . . [T]he Penas testified that Sadio referred to third parties complaining about or complimenting his product, and the Penas assumed these third parties were his customers. Although "mere awareness on the part of the seller that the buyer intends to resell the drugs is not sufficient to show that the seller and the buyer share a conspiratorial intent to further the buyer's resale," . . . a seller whose business depends on selling wholesale quantities "may well realize that his buyers' ability to buy and pay for substantial amounts of drugs, and hence, his profit, will depend on the buyers' ability to resell." . . . William Pena testified that he did not sell to people who "were just buying for use" and instead trafficked in quantities of no less than 5 grams. A jury could therefore infer that his business depended on selling wholesale quantities to other dealers, and he and his brother knew that Sadio was one such dealer.

9

> "In such case, the liability of buyer and seller for having conspired together to transfer drugs ... depend[s] ... on a further showing of the seller's interest, shared with the buyer, in the success of the buyer's resale." *Parker,* 554 F.3d at 236. To prove that interest, the Government also presented evidence that the Penas supported Sadio's dealing by, for example, immediately replacing 135 grams of crack when he complained that it was not good. William Pena testified that it was important to him to make Sadio happy because Sadio "was bringing [him] money, a lot of money." Both William Pena's testimony and the evidence of specific sales to Sadio suggest that the Penas' business relied on the regular sale of crack cocaine in bulk, which could only be accomplished if their buyers were selling their purchases.
>
> In sum, the evidence was sufficient to permit a rational jury to conclude beyond a reasonable doubt that Sadio regularly sold the drugs he purchased and purchased more drugs, so he "knowingly and intentionally participated in the narcotics-distribution conspiracy by agreeing to accomplish its illegal objective beyond the mere purchase or sale." *United States v. Hawkins,* 547 F.3d 66, 73-74 (2d Cir.2008).

Muhammad, 520 Fed. Appx. at 40. Because the very same sufficiency of the evidence claim that Sadio tries to raise in this habeas petition was addressed and rejected on appeal, the claim is procedurally barred.[1]

### C. **Determination of the Base Offense Level**

With respect to his sentencing, Sadio claims that the court erred in calculating the quantity of narcotics involved in the

---

[1] Moreover, for the reasons set forth by the government in its response, even on its merits, this claim fails. See Government's Response to Sadio's Petition under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. 6) ("Gov't Response") at 17 to 19.

10

offense, causing it to err in calculating the base offense level. Specifically, he contends that the court erred in attributing between 280 grams and 800 grams of crack cocaine to him for his role in the charged conspiracy. This is the first time Sadio has raised this claim.

This claim is a procedurally defaulted claim because Sadio could have raised it on direct appeal. Thus, Sadio must show both "cause" for the default and "prejudice" that resulted from the alleged violation. See Reed, 512 U.S. at 354.

Here, Sadio fails to explain why he did not raise this claim earlier. There was no apparent impediment to him challenging the quantity of narcotics attributable to his offense both at sentencing and on direct appeal. Moreover, this claim is not cognizable on habeas review because it concerns a claim of improper application of the sentencing guidelines. In Graziano v. United States, the court decided that claims of improper application of the sentencing guidelines are not generally cognizable under 28 U.S.C. § 2255:

> In *Femia v. United States,* 47 F.3d 519, 525 (2d Cir.1995), we discussed-without deciding-whether the "complete miscarriage of justice" standard should apply to challenges to the application of the Sentencing Guidelines raised for the first time in a § 2255 motion. Insofar as claims regarding a sentencing court's error in failing to properly apply the Sentencing Guidelines are neither constitutional nor jurisdictional, we join several other circuits in holding that, absent a complete miscarriage of justice, such claims will not be considered on a § 2255 motion where the defendant failed to raise them on direct appeal. *See*

11

> *United States v. Schlesinger,* 49 F.3d 483, 485 (9th Cir.1994) ("[N]onconstitutional sentencing errors that have not been raised on direct appeal have been waived and generally may not be reviewed by way of 28 U.S.C. § 2255"); *Knight v. United States,* 37 F.3d 769, 772-74 (1st Cir.1994) (finding error in application of Sentencing Guidelines that was not raised on direct appeal to be unreviewable on a § 2255 motion unless the defendant demonstrates a "complete miscarriage of justice"); *Scott v. United States,* 997 F.2d 340, 341-42 (7th Cir.1993) (finding that court's misapplication of the Sentencing Guidelines not cognizable on a § 2255 motion in the absence of a "complete miscarriage of justice"); *United States v. Vaughn,* 955 F.2d 367, 368 (5th Cir.1992) (per curiam) (finding that error in application of Sentencing Guidelines does not constitute "complete miscarriage of justice" meriting review under § 2255 where defendant failed to raise claim on direct appeal); *see also United States v. Essig,* 10 F.3d 968, 977 n. 25, 979 (3d Cir.1993) (applying "cause and prejudice" test of *United States v. Frady,* 456 U.S. 152, 162-64, 167, 102 S.Ct. 1584, 1591-93, 1594, 71 L.Ed.2d 816 (1982), to Sentencing Guidelines claims raised for the first time in § 2255 motion; noting that by failing to raise issue on direct appeal, defendant waived the prior question of whether the sentencing error constituted plain error).

Graziano, 83 F.3d at 590. Here, Sadio makes no proffer with respect to, and there is nothing in the record that suggests there is an issue as to, a miscarriage of justice.[2]

### D. **Conflict of Interest**

"'A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel.'" United States v. Schwarz, 283 F.3d 76, 90 (2d Cir. 2002) (quoting United States v. Blau, 159 F.3d 68, 74 (2d Cir. 1998)). "A claim that counsel is conflicted is in

---

[2] Moreover, even on its merits, the petitioner's sentencing claim fails for the reasons set forth by the government in its response. See Gov't Response at 22-23.

essence a claim of ineffective assistance of counsel." United States v. Stantini, 85 F.3d 9, 15 (2d Cir. 1996) (citing Glasser v. United States, 315 U.S. 60, 70 (1942)).

In Strickland v. Washington, the Supreme Court held that a defendant must establish (1) that his counsel's performance "fell below an objective standard of reasonableness" and (2) that counsel's unprofessional errors actually prejudiced the defense. 466 U.S. 668, 688 (1984).

> To satisfy the first, or "performance," prong, the defendant must show that counsel's performance was "outside the wide range of professionally competent assistance," [Strickland, 466 U.S.] at 690, and to satisfy the second, or "prejudice," prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

Brown v. Artuz, 124 F.3d 73, 79-80 (2d Cir. 1997). A defendant must meet both requirements of the Strickland test to demonstrate ineffective assistance of counsel. If defendant fails to satisfy one prong, the court need not consider the other. See Strickland, 466 U.S. at 697. "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting

13

Strickland, 466 U.S. at 696-97 (internal citations omitted)). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Id. (quoting Strickland).

"However, when the claim of ineffective assistance of counsel is based on an asserted conflict of interest, a less exacting standard applies, and prejudice may be presumed." United States v. Moree, 220 F.3d 65, 69 (2d Cir. 2000). "A defendant is entitled to a presumption of prejudice on showing (1) 'an actual conflict of interest,' that (2) 'adversely affected his lawyer's performance.'" Id. (quoting Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)).

To meet his burden under Cuyler, the petitioner must first establish that an actual conflict of interest existed, that is he must show "the attorney's and defendant's interests 'diverge[d] with respect to a material factual or legal issue or to a course of action.'" Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993) (quoting Cuyler, 446 U.S. at 356 n.3). Second, the petitioner must establish an actual lapse in representation that

14

resulted from the conflict. See id. at 309. An actual lapse in representation is demonstrated by the existence of some "plausible alternative defense strategy not taken up by defense counsel." Id. (citations omitted). Third, the petitioner must establish causation, that is, he must establish that the alternative defense strategy "was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." Moree, 220 F.3d at 69 (quoting Winkler, 7 F.3d at 307).

Sadio claims that his trial counsel, Attorney Sebastian DeSantis, somehow suffered from an actual conflict of interest. He does not explain the nature of the conflict, other than to point out that Attorney DeSantis had represented him initially in this case and had been replaced by new CJA counsel when there was a breakdown in communication between Sadio and Attorney DeSantis.

Attorney DeSantis was initially appointed to represent Sadio in December 2009. It is true that replacement CJA counsel was appointed when Attorney DeSantis filed a motion to withdraw as counsel in April 2010, stating that he was doing so at Sadio's direction. The court determined that Sadio had asked Attorney DeSantis to withdraw from the case and granted the motion. The court then appointed Attorney John Andreini to represent the defendant. After jury selection and just before

the start of evidence, Attorney Andreini also moved to withdraw as counsel. In support of that motion, he stated that he and the defendant were no longer communicating and that he perceived there to be at least a potential conflict of interest because, after jury selection, Sadio indicated that he had filed a grievance against him. The court held a hearing. At the hearing, Attorney Andreini reported that he perceived there to be a potential conflict of interest based on the fact that Sadio indicated to Attorney Andreini that he had filed a grievance against him. Attorney Andreini felt that fact placed him in an adversarial relationship with Sadio. Sadio addressed the court personally in support of his request for new counsel. He said that he did not think he could get a fair trial with Attorney Andreini representing him because he did not think they had prepared sufficiently for trial. He asked the court to grant him new counsel and specifically asked the court to consider re-appointing Attorney DeSantis:

> I wish, man, if he had to -- in the amount of time, I wish I could go back with Mr. DeSantis. I expressed that to him in the hallway, I apologized . . . If you gave me that same chance again, I would. Since he put a lot of time in the case, I would go back to Mr. DeSantis, if you gave us some time.

Tr.9/21/10 at 11. Thus, Sadio represented that he regretted having asked for Attorney DeSantis to be replaced and that, if

16

Attorney DeSantis would agree to represent him again, he would like to have him as counsel.

In his § 2255 motion, Sadio suggests that there was an actual conflict of interest between him and Attorney DeSantis, but he does not explain the nature of the conflict. He appears to suggest that Attorney DeSantis did not have enough time to prepare for the trial but offers no factual support for this claim. Attorney DeSantis represented the defendant from the date of the original indictment in December 2009 until he withdrew from the case in April 2010. He took over representation of the defendant again in September 2010 and represented him for the trial, which commenced in December 2010 after the court selected a new jury. The record contains nothing that suggests that Attorney DeSantis was not prepared to proceed to trial or that he suffered any potential or actual conflict of interest. To the contrary, in November 2010, Attorney DeSantis filed substantive motions on behalf of the defendant, including motions to dismiss the indictment, to suppress the evidence seized from the defendant's residence at the time of his arrest, and to suppress the fruits of the wiretap orders. Attorney DeSantis performed effectively at trial, attacking the credibility of the government's cooperating witnesses and putting on the testimony of the

defendant's parents, who suggested that he was a drug user and not a drug dealer.

Thus, there is no factual support for the proposition that Attorney DeSantis suffered from either an actual or a potential conflict of interest. Moreover, assuming <u>arguendo</u> that a potential conflict existed, nothing in the record supports the contention that such a conflict adversely affected Attorney DeSantis's performance at any stage of the trial or sentencing.

**IV. CONCLUSION**

For the reasons set forth above, the motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) is hereby DENIED. The court will not issue a certificate of appealability because Sadio has not made a substantial showing of the denial of a constitutional right. <u>See</u> 28 U.S.C. § 2253(c)(2).

It is so ordered.

Signed this 31st day of August, 2017 at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge